**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **DOCKET NO. 3:02CR366(CFD)** |
| **V.** | : | |
| | : | **JUNE 2, 2005** |
| **OSCAR GONZALEZ** | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**I.     INTRODUCTION**

The Defendant, Oscar Gonzalez, respectfully files this Memorandum as an aid to the Court in sentencing scheduled for *Monday, June 20, 2005 at 10:00am* in the United States District Court, Hartford, Connecticut in front of the Honorable Christopher F. Droney, U.S.D.J.  Based upon the review of the pre-sentence report ("PSR"), as well as discussions with Assistant United States Attorney James K. Filan, Jr. and United States Probation Officer Carla-Jo Wagenstein-Vega, undersigned counsel believes a dispute exists as to what Mr. Gonzalez's Guidelines range is.  While Ms. Wagenstein-Vega presents her proposed Guidelines calculation, see PSR ¶¶ 27-38[1], the undersigned submits that Mr. Gonzalez's Guidelines range should be calculated as 78-97 months based on a Total Offense Level 28 and a Criminal History Category I.

The Defendant believes that proper grounds for a downward departure exist in this case.  First, the Court has the authority pursuant to § 5C1.2 of the Guidelines to depart below the applicable mandatory minimum sentence.  Second, the Defendant should receive a minor or minimal role reduction pursuant to § 3B1.2.  Third, if this Court applies § 3B1.2(b), the Defendant's Total Offense Level must be reduced an additional three points pursuant to Guidelines § 2D1.1(a)(3)(B)(ii).  Fourth, this Court should downwardly depart from the applicable Sentencing Guidelines pursuant to § 5K1.1 and the substantial assistance motion to be filed on Mr. Gonzalez's

---

[1] Ms. Wagenstein-Vega calculates Mr. Gonzalez's Guidelines range as 135-168 months based on Base Offense Level 36 (§ 2D1.1(c)(2)) minus three levels for Acceptance of Responsibility (§§ 3A1.1(a), (b)), coupled with a Criminal History Category I.

1

behalf.  Fifth, this Court should downwardly depart from the applicable Sentencing Guidelines pursuant to § 5K2.16 and the Defendant's voluntary disclosure of offenses unknown to the Government and law enforcement.  Sixth, the Defendant is entitled to receive jail credit for the jail time he has served while in state custody in this case.  Lastly, the Defendant asks that the Court utilize its new discretionary authority pursuant to *Blakely, Booker, Fanfan* and *Crosby*.

## II.     FACTUAL HISTORY

Standing before the Court is a 31-year old male who has pled guilty to one count of 21 U.S.C. §§ 841(b)(1)(A) and 846, Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine.[2]  The Defendant was arraigned on this charge on June 9, 2003 and entered a guilty plea on August 25, 2003.  Mr. Gonzalez faces a maximum sentence of life in prison as well as a mandatory minimum sentence of 10 years incarceration.

Counsel has worked closely with Mr. Gonzalez over the past months and strongly believes that he is entitled to both a reduction in his current Guidelines sentence.

## III.    MR. GONZALEZ'S GUIDELINES RANGE IS 63-78 MONTHS, BASED ON A TOTAL OFFENSE LEVEL OF 26 AND A CRIMINAL HISTORY CATEGORY I.

It is submitted that Mr. Gonzalez's Guidelines range is 63-78 months, based on a Total Offense Level of 26 and a Criminal History Category I.  The Defendant arrives at this proposed Guidelines range through the following calculation (note that this computation is exclusive of the fact that Defendant as well as the undersigned anticipate a § 5K1.1 substantial assistance motion):

| | |
|---|---|
| Base Offense Level (§ 2D1.1(c)(2)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 36 |
| Acceptance of Responsibility (§§ 3A1.1(a), (b)) . . . . . . . . . . . . . . . . . . . . . . . . . . | -3 |
| Safety Value (§§ 5C1.2, 2D1.1(b)(6)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -2 |
| Minor Role Reduction (§ 3B1.2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -2 |
| Mitigating role "cap" (§ 2D1.1(a)(3)(B)(ii)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | <u>-3</u> |
| TOTAL OFFENSE LEVEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 26 |

---

[2] As ¶ 3 of the Pre-Sentence Report shows, there are three co-defendants related to this case: Hugo Jorge, Adolfo Paulino and Jesus Contreras.

2

**IV.    THIS COURT HAS THE AUTHORITY PURSUANT TO § 5C1.2 OF THE GUIDELINES TO DEPART BELOW THE APPLICABLE MANDATORY MINIMUM SENTENCE IN THIS CASE.**

This Court has the authority pursuant to § 5C1.2 of the Guidelines to depart below the applicable mandatory minimum sentence in this case. Specifically, it is submitted that Mr. Gonzalez meets the criteria of requirements one through five of § 5C1.2 and thus qualifies for a "safety valve" exception to the statutory mandatory minimum sentence of ten years the Defendant is facing pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846.

According to the 2002 Guidelines, § 5C1.2 reads that a sentencing court "shall impose a sentence in accordance with the applicable Guidelines without regard to any statutory mandatory minimum sentence" if the court finds that the defendant meets the following criteria:

(1) the defendant does not have more that 1 criminal history point, as determined under the sentencing Guidelines;
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;
(4) the defendant was not an organizer, leader, manager or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

It is submitted that Mr. Gonzalez meets the criteria as set forth above, and as such permits the Court to sentence according to the Guidelines without being bound to the mandatory minimum sentence that 21 U.S.C. §§ 841(b)(1)(A) and 846 calls for. Additionally, in her PSR at ¶ 57 Ms. Wagenstein-Vega agrees that this Defendant is safety valve–eligible.

V.   **THE FACTS AND CIRCUMSTANCES IN THIS CASE SUPPORT A MITIGATING ROLE REDUCTION PURSUANT TO § 3B1.2.**

The facts and circumstances in this case support a mitigating role reduction pursuant to § 3B1.2 of the Guidelines. Pursuant to this subsection, a sentencing court may decrease a Defendant's offense level under two scenarios: (a) if the defendant was a *minimal* participant in any criminal activity, or (b) if the defendant was a *minor* participant in any criminal activity.

The facts and circumstances in Mr. Gonzalez's case provide grounds for a mitigating role reduction. As Application Note 3 of § 3B1.2 states, "a defendant who is accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guidelines." The same application note utilizes an example that is similar to the case at bar: "For example, a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this subsection."

For purposes of this argument under § 3B1.2, a defendant's courier role in a drug conspiracy is based on relevant conduct. Where relevant conduct is limited to drug amounts the defendant personally handled, the defendant's role is limited. A defendant may show his/her minor role if other participants played much more important roles. For example, other participants may have organized the operation, obtained the drugs, bought the car and concealed the drugs in it, arranged for the drugs to be picked up after the trip, and negotiated payment with the buyer. *See* Haines, et al.*, Federal Sentencing Guidelines Handbook, November 2004 Edition*, pg. 1099.

As the PSR reflects in ¶¶ 6-16, the DEA was pursuing an international investigation regarding cocaine trafficking from Columbia to Houston, TX for ultimate distribution in the New York City area. It is apparent that Mr. Gonzalez was not connected with that aspect of the

conspiracy. Mr. Gonzalez readily admits, however, his recruitment by a childhood friend to function as a driver to pick up and/or deliver narcotics. As such, the relevant conduct under § 1B1.3 of the defendant in this conspiracy should be limited to that of a driver, having been recruited to make pick-ups and deliveries for which the defendant was unaware of. It is that conduct for which the defendant should be held accountable. From the Government's facts, it is unknown whether the defendant could reasonably have been aware of the extent of the conspiracy created by those other than himself.

While the defendant has stipulated to 120 kilograms of cocaine, no set of facts which would indicate that the Defendant would have known he was participating in a conspiracy that dealt in that quantity. The 120 kilograms – which was the end result of the Government's seizure – was a figure calculated after the arrest and seizure of illegal narcotics by authorities in this case. It is submitted therefore that the Defendant's position as a courier makes him substantially less culpable than the organizers and originators of the underlying trafficking from Columbia to greater New York.

The facts of this case illustrate that there were other participants involved who organized the operation, who negotiated the sale of drugs, who supplied the car, who arranged the pick-up and delivery points, and this demonstrates that the Defendant can be considered for a role reduction by this Court. The Defendant's participation is of limited duration (July-October 2001) and it is beyond the scope of this case as to the significance of the overall international conspiracy that the DEA became aware of. It seems, therefore, that Mr. Gonzalez is eligible for a mitigating role reduction in this matter.

**VI. IF THIS COURT APPLIES § 3B1.2(b), THE GUIDELINES THEN INSTRUCT THIS COURT TO REDUCE DEFENDANT'S TOTAL OFFENSE LEVEL AN ADDITIONAL THREE POINTS PURSUANT TO GUIDELINES § 2D1.1(a)(3)(B)(ii).**

If this Court applies § 3B1.2(b), the Guidelines then instruct this Court to reduce Defendant's Total Offense Level an additional three points pursuant to Guidelines §

2D1.1(a)(3)(B)(ii). The November 1, 2004 Guidelines allow for an Offense Level "cap" for defendant receiving a mitigating role reduction. As discussed in Section V of this Memorandum, since it is submitted that Mr. Gonzalez is eligible for a minor role adjustment pursuant to § 3B1.2(b), the Guidelines mandate that he receive an additional three point reduction pursuant to Guidelines § 2D1.1(a)(3)(B)(ii).

### A. The November 1, 2004 Guidelines Allow For An Offense Level "Cap" For Defendants Receiving a Mitigating Role Reduction.

The November 1, 2004 Guidelines allow for an Offense Level "cap" for defendant receiving a mitigating role reduction. Prior to the November 1, 2004 effective date of Amendment 668, § 2D1.1(a)(3) stated that a offense level "cap" was not available to those defendants whose offense level specified in the Drug Quantity Table (§ 2D1.1(c)) was over a base offense level 30. Amendment 668. however, modified § 2D1.1(a)(3) to state the following:

> **§ 2D1.1(a)(3)**: Base Offense Level (apply the greatest) – the offense level specified in the Drug Quantity Table set forth in subsection (c), except that if (A) the defendant receives an adjustment under § 3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (i) level **32**, decrease by **2** levels; (ii) level **34** or level **36**, decrease by **3** levels; or (iii) level **38**, decrease by **4** levels.

In Appendix C of the November 1, 2004 Guidelines, the Sentencing Commission reasoned that this modification was done to address proportionality concerns arising from the "mitigating role cap." Specifically, the Commission stated that its purpose behind this Amendment was to "address proportionality concerns arising from the across-the-board level 30 mitigating role cao that was added in 2002." *See Appendix C*. The commentary goes on to state that Amendment 668 provides a graduated reduction for offenders whose quantity level under § 2D1.1(c) results in a base offense level greater than 30. The Commission has therefore provided that an individual in Mr. Gonzalez's position be eligible for the Offense Level "cap."

    **B. Assuming This Court Finds Mr. Gonzalez Eligible For A Minor Role Adjustment Pursuant To § 3B1.2(b), The Guidelines Mandate That He Receive An Additional Three Point Reduction Pursuant To Guidelines § 2D1.1(a)(3)(B)(ii).**

Assuming this Court finds Mr. Gonzalez eligible for a minor role adjustment pursuant to § 3B1.2(b), the Guidelines mandate that he receive an additional three point reduction pursuant to Guidelines § 2D1.1(a)(3)(B)(ii). Additionally, a sentencing court may not deny a defendant the benefit of a mitigating role cap even if it results in a great reduction in sentence. *See United States v. Bush*, 352 F.3d 1177 (8th Cir., 2003) (holding that the district court erred in basing its decision to deny the reduction in part based on the reduction in the sentence the adjustment would compel).

**VII. THIS COURT SHOULD DOWNWARDLY DEPART PURSUANT TO THE ANTICIPATED § 5K1.1 MOTION BY THE GOVERNMENT.**

It is anticipated that the Government will be filing a § 5K1.1 motion due to his substantial assistance to authorities in this matter. As a result, Mr. Gonzalez joins the Government in that request and asks that the Court downwardly depart pursuant to this Motion. See U.S.S.G. §5K1.1 (upon motion of the government); *United States v. Udo*, 963 F.2d 1318, 1319 (9th Cir. 1992) (once government makes motion, court can depart more than government recommends); *United States v. King* 53 F.3d 589, 590-92 (3d Cir. 1995) (when departing downward, court must evaluate D's cooperation on an individualized basis and cannot engage in mechanical reduction of only 3-levels).

**VIII. THIS COURT SHOULD DOWNWARDLY DEPART PURSUANT TO §5K2.16 AND THE DEFENDANT'S VOLUNTARY DISCLOSURE OF CRIMINAL CONDUCT UNKNOWN TO THE GOVERNMENT AND LAW ENFORCEMENT.**

This Court should downwardly depart pursuant to § 5K2.16 and the Defendant's voluntary disclosure of criminal conduct unknown to the Government and law enforcement. According to § 5K2.16, "if the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a downward departure may be warranted." In this case, the defendant voluntarily disclosed to authorities the existence of, and accepted responsibility

for, ongoing offenses prior to the discovery of the underlying offense by federal authorities. It is submitted that the continuity of such action by Mr. Gonzalez was unlikely to be discovered, and therefore should receive a departure.

This Court has substantial authority, pursuant to the Guidelines and prevailing case law, to depart due to this disclosure. See U.S.S.G. §5K2.16; United States v. Jones, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered that the defendant voluntarily disclosed to pretrial services officer false statements he made to obtain firearm even though would have been inevitably discovered by FBI); United States v. Plunkett, (Cr. 93-60, Sept. 7, 1993)(in unarmed bank robbery case, under U.S.S.G. 5K2.16, Helen Frye in departed downward 18 levels, from 21 to 3 because the defendant, while serving time on an unrelated sentence, called up the FBI and confessed to a robbery he had committed two years earlier); United States v. DeMonte, 25 F.3d 343 (6th Cir. 1994) (in computer fraud case, departure proper on ground that defendant admitted to crimes about which government had no knowledge, even though plea bargain required cooperation-remanded).

**IX.     THE DEFENDANT IN ENTITLED TO RECEIVE JAIL CREDIT FOR THE JAIL TIME HE HAS SERVED WHILE IN STATE CUSTODY IN THIS CASE.**

The Defendant is entitled to receive jail credit for the jail time he has served while in state custody in this case. While the Defendant understands that 18 U.S.C. § 3585(b) does not authorize the district court to compute credit at sentencing, s*ee United States v. Wilson*, 503 U.S. 329, 333 (1992), [3] the Defendant in the instant matter asks the Court to alternatively depart downward to

---

[3] "The United States Attorney General has the authority to determine the appropriate credit for time spent in 'official detention' under 18 U.S.C. § 3585(b) once a defendant has begun to serve his or her sentence." *United States v. Payton*, 159 F.3d 49, 61-62 (2d Cir. 1998). The Attorney General has delegated this authority to the Bureau of Prisons (BOP)." 28 C.F.R. § 0.96 (1999). Thus, is typically is for the BOP to decide when a sentence is deemed to "commence." *United States v. Luna-Reynoso*, 258 F.3d 111, 117 (2d Cir. 2001); *see also United States v. Montez-Gaviria*, 163 F.3d 697, 700 (2d Cir. 1998) ("The Bureau of

properly credit him for the state of Connecticut prison time he served for the identical criminal conduct pursuant to Guidelines § 5G1.3(b).

According to § 5G1.3(b) of the Guidelines, the Court has the authority to adjust this Defendant's sentence for the term of imprisonment he has served in state custody if the Court determines that such period of time will not be credited to the federal sentence by the Bureau of Prisons. In this matter, Mr. Gonzalez was arrested by state authorities in November 8, 2001 and was presented in United States District Court on June 9, 2003. The criminal conduct as alleged in the state arrest and the federal arrest are identical. Due to their identical nature, it is submitted that this Court has the authority pursuant to § 5G1.3 to adjust Mr. Gonzalez's sentence by nineteen months to encompass the jail time that Mr. Gonzalez served under the custody of the New York State Department of Corrections (this is, if the Bureau of Prisons fails to do so).

Additionally, according to Application Note 2(C) of the Commentary of § 5G1.3(b), if subsection (b) applies and the court adjusts the sentence for a period of time already served, the court should note on the "Judgment in a Criminal Case Order" (i) the applicable subsection (*e.g.,* § 5G1.3(b)); (ii) the amount of time by which the sentence is being adjusted; (iii) the undischarged term of imprisonment for which the adjustment is being given; and (iv) that the sentence imposed is a sentence reduction pursuant to § 5G1.3(b) for a period of imprisonment that will not be credited by the Bureau of Prisons."

In concert with the above, § 5G1.3(b)(2) states that if subsection (b)(1) applies, then "the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." As Mr. Gonzalez is serving a sentence out of New York State of 100 months to life (imposed 6/10/02), subsection (b)(2) mandates that this federal sentence shall run concurrently to his New York City sentence.

---

Prisons, and not the Courts, determines when a defendant's sentence starts and whether the defendant should receive credit for any prior time spent in custody.")

X.  **THE DEFENDANT ASKS THAT THE COURT UTILIZE ITS NEW DISCRETIONARY AUTHORITY PURSUANT TO THE DECISIONS BESTOWED UPON IT IN *BLAKELY, BOOKER, FANFAN* AND *CROSBY*.**

Mr. Gonzalez asks that the Court utilize its new discretionary authority pursuant to the decisions bestowed upon it in *Blakely, Booker, Fanfan* and *Crosby.* In *United States v. Booker,* 2005 U.S. Lexis 628, 125 S. Ct. 738 (2005) and *United States v. Fanfan*, 2005 WL 50108, 125 S. Ct. 738 (2005) ("*Booker/Fanfan"),* the Supreme Court concluded that the Federal Sentencing Guidelines violate the Sixth Amendment right to a trial by jury. Citing *Apprendi v. New Jersey,* 530 U.S. 466 (2001), *Ring v. Arizona*, 536 U.S. 584 (2002), and *Blakely v. Washington*, 124 S. Ct. 2531 (2004), the Court began its analysis by stating that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 2005 WL 50108 at *7 (quoting *Apprendi*, 530 U.S. at 490). Consequently, "the statutory maximum … is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id*. at *8 (quoting *Blakely*, 124 S. Ct. at 2537; emphasis in original). Because the Guidelines impose upon judges the obligation to examine evidence and make factual findings that could increase a defendant's sentence above what would be permitted by the jury's verdict alone, the Court determined that the Guidelines were unconstitutional.

The Court then announced its unexpected decision to salvage the Guidelines by making them advisory.  If the Guidelines are advisory, the judge may exercise his or her discretion in this way without violating the Sixth Amendment, because under these circumstances a jury need not find the predicate facts bearing on sentencing. Under the Court's new regime, "district courts, while not bound to apply the Guidelines, must consult them and take them into account when sentencing." *Id*. at *27.

Very recently, the Second Circuit addressed the U.S. Supreme Court's *Booker/Fanfan* opinions through the February 2, 2005 decision in *United States v. Crosby,* 2005 U.S. App. Lexis 1699 (2005). And here is *Crosby*'s very useful summary of the state of federal sentencing (at least in the Second Circuit) after *Booker*:

> [W]e can identify several essential aspects of *Booker/Fanfan* that concern the selection of sentences. First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.
>
> These principles change the Guidelines from being mandatory to being advisory, but it is important to bear in mind that *Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge. Thus, it would be a mistake to think that, after *Booker/Fanfan*, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum. On the contrary, the Supreme Court expects sentencing judges faithfully to discharge their statutory obligation to "consider" the Guidelines and all of the other factors listed in section 3553(a). We have every confidence that the judges of this Circuit will do so, and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice. In short, there need be no "fear of judging."

*Crosby*, 2005 U.S. App. Lexis 1699, *25-26. Mr. Gonzalez asks that this Court utilize the new directives imposed by the Second Circuit in fashioning his sentence.

## XI.    CONCLUSION

Mr. Gonzalez respectfully requests this Court to consider the arguments submitted in this sentencing memorandum, along with the argument put forth at oral argument, and the Defendant asks that a sentence in accordance with the Guidelines and prevailing law be entered.

```
                              RESPECTFULLY SUBMITTED,
                              OSCAR GONZALEZ


                           By /s/_____
                              FRANK J. RICCIO
                              LAW OFFICES FRANK J. RICCIO LLC
                              923 EAST MAIN STREET
                              P.O. BOX 491
                              BRIDGEPORT CT 06601-0491
                              Fed Bar #CT 00148
                              (203) 333-6135 (phone)
                              fricciojd@aol.com
```

**CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this the 2nd day of June, 2005 to James K. Filan, Jr., Esq., Assistant United States Attorney, 915 Lafayette Boulevard, Bridgeport, CT 06604 and Carla Jo Wagenstein-Vega, United States Probation Officer, Office of United States Probation, 915 Lafayette Boulevard, Brrdigpeort, CT 06604

```
                           By /s/_____
                              FRANK J. RICCIO
                              LAW OFFICES FRANK J. RICCIO LLC
```